*11749*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

**EAST ENTERPRISE & TRANSPORT ASSOCIATION LTD.,**

Plaintiff,

- against -

**WINSTAR SHIPPING SERVICES,**

Defendant.

---------------------------------------------------------x

**Case No**

**VERIFIED COMPLAINT**

Plaintiff, **EAST ENTERPRISE & TRANSPORT ASSOCIATION LTD..,** (hereinafter "**EAST ENTERPRISE**"), by its attorneys, **JUNGE & MELE, LLP,** complaining of the Defendant, **WINSTAR SHIPPING SERVICES** (hereinafter "**WINSTAR**"), alleges as follows:

1. This is a case of admiralty jurisdiction pursuant to 28 U.S.C. §1333(1), and an action in aid of foreign arbitration pursuant to the Arbitrations Act, 9 U.S.C. §1, *et seq.*, and the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §201, *et seq.*, and maritime claim within the meaning of Rules 9(h) and 38(e) of the Federal Rules of Civil Procedure.

2. At all times relevant, Plaintiff, EAST ENTERPRISE, was a foreign business corporation located at One Hillars Court, Hillars Court, PO Box N7117, Nassau, Bahamas, and c/o Scan-Trans Shipping & Chartering Sdn Bhd, Kuala Lumpur, Malaysia.

3. At all times relevant, WINSTAR was a foreign business corporation, with its office located at 78/79 Armenian Street, Chennai, 60001, India.

4. EAST ENTERPRISE, as disponent owner of the vessel *Afiya*, agreed to carry certain cargoes for WINSTAR on a voyage from Chennai, India, to Maputo, Mozambique, as more fully set forth in the attached "CONLINEBOOKING" Liner Booking Note dated at Kuala Lumpur, Malaysia, on December 11, 2007, a true copy of which is annexed hereto as *Exhibit "1."*

5. Under the terms of the aforesaid booking note, ocean freight was set at a lump sum of $340,000.00, and the detention rate at $13,500.00 per day, pro-rated, on the basis of "liner out hook," as fast as the vessel can deliver, day or night, Saturdays, Sundays and holidays included, otherwise detention accrues. *See Exhibit "1," clause 22.*

6. Pursuant to WINSTAR's instructions, following the loading of the cargoes at Chennai on December 28, 2007, negotiable on-board bills of lading CHE/MPM/01 and CHE/MPM/02 were issued by or on behalf of the vessel's Master, true copies of which are jointly annexed hereto as *Exhibit "2."*

7. Subsequently, the vessel arrived in Maputo to discharge the said cargoes; however, in breach of its contract of carriage with EAST ENTERPRISE, WINSTAR failed to receive the cargoes in accordance with clause 22, causing delays which resulted in 5.71528 days detention, for which it became liable to EAST ENTERPRISE in the amount of $77,156.28, as more fully set forth in EAST ENTERPRISE's detention invoice dated January 21, 2008, a true copy of which is annexed hereto as *Exhibit "3."*

8. Pursuant to clause 32 of the governing booking note, any dispute between

the parties arising under their agreement is to be subject to arbitration in London under English law, and this action is being brought in aid of such arbitration, either pending or contemplated.

9. In the arbitration in London, EAST ENTERPRISE expects to recover from WINSTAR approximately $100,000.00, calculated as follows: on its principal claim, the amount of $77,156.28, with interest from January 21, 2008; and on its claim for legal expenses and costs in arbitration, an amount to be determined.

10. Defendant cannot be found within this district within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but Defendant is believed to have or will have during the pendency of this action, assets within this district consisting of cash, funds, freight, hire, or credits including but not limited to electronic fund transfers in the hands of garnishees in this district, including but not limited to the following:

1. Bank of China
2. HSBC (USA) Bank
3. Bank of New York Mellon
4. Barclay's Bank
5. JPMorgan Chase Bank
6. Wachovia Bank
7. Bank of America, N.A.
8. American Express Bank

    9.    Citibank, N.A.

    10.    Standard Chartered Bank

    11.    UBS, A.G.

    12.    BNP Paribas

    13    Calyon Bank

    14.    Bank of Commerce

    15.    Deutsche Bank

WHEREFORE, Plaintiff prays for the following relief:

1. That process in due form of law according to the practice of this Court be issued against Defendant and that Defendant be cited to appear and answer the allegations herein;

2. That since Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all of Defendant's tangible or intangible property or any other funds held by garnishees including, but not limited to, the aforementioned garnishees in this District, which are due and owing or otherwise the property of Defendant, up to the amount of $100,000.00, to secure Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in this Verified Complaint.

3. That such property attached pursuant to the Process of Maritime Attachment and Garnishment remain sequestered to serve as security for the payment of Plaintiff's claims as they may be embodied in any award issued in arbitration in London.

4. That Plaintiff have judgment against Defendant for any of its property attached in this District up to an amount of $100,000.00, and that said property be condemned to satisfy any such Judgment; and

5. That Plaintiff have such other and further and different relief as may be just and proper, including judgment against Defendant, along with interest, costs and disbursements as allowable under law.

Dated in the City of New York on February 4, 2008

                                      Respectfully submitted,

                                      JUNGE & MELE, LLP
                                      *Attorneys for Plaintiff*

                                      Peter A. Junge (PJ-0745)
                                      29 Broadway
                                      New York, NY 10006
                                      (212) 269-0061

*11749 Verified Complaint.wpd*

VERIFICATION

PETER A. JUNGE declares as follows:

1. I am admitted to the bar of this Honorable Court and am a partner in the firm of Junge & Mele, LLP, attorneys for Plaintiff.

2. I have read the foregoing Complaint and I believe the contents thereof are true.

3. The reason this Verification is made by deponent and not by Plaintiff is that Plaintiff is a foreign corporation, no officers or directors of whom are within this jurisdiction.

4. The sources of my information and belief are documents provided to me and statements made to me by Plaintiff.

5. I declare under penalty of perjury that the foregoing is true and correct.

Dated in the City of New York on February 4, 2008

Peter A. Junge

# EXHIBIT "1"

**"CONLINEBOOKING"**

**LINER BOOKING NOTE**

1. Agents – Shipbrokers

Scan-Trans Shipping & Chartering Sdn Bhd
6th Floor, Tower Block
Syed Kechik Foundation Building
Jalan Kapas, Bangsar
59100 Kuala Lumpur, Malaysia

2. Place and date

Kuala Lumpur 11th December 2007

3. Carrier

East Enterprise & Transport Association Ltd, Nassau
c/o: Scan-Trans Shipping & Chartering Sdn Bhd- Malaysia

4. Merchant (see Clause 1)

WINSTAR SHIPPING SERVICES, 78/79 ARMENIAN STREET, CHENNAI 600 001 INDIA
Telephone No: +91 44 25222142
Fax No: +91 44 25243001

5. Vessel's name

MV Afiya

6. ~~Time for shipment~~ (about)

Laydays abt 16-25 December 2007 *

7. Loading port (or so near thereunto as the vessel may safely get and lie always afloat)

Chennai – Carrier's berth

8. Discharging port

Maputo – Carrier's berth

9. Description of goods

5 NOS LOCO UPPER 15.5 X 2.8 X 3. 4 LBH M /WT 45 TONS EACH
10 NOS WHEEL BOGIE 5 X 2.6 X1 M LBH M/WT 15 TONS EACH
*Spares in Pkgs. Appx. 10 – 15 CBM.*

10. Freight rate (also indicate whether prepayable or payable at destination)

Freight USD340,000 lumpsum liner term hook/hook for cargo as descb.

11. Demurrage/Detention rate (if agreed)

damage for detention usd13,500 pdpr

12. Merchant's representatives at loading port (state full name and address, telegraphic address, telephone and telex)

13. Special terms, if agreed

- shore / floating both carriers account in case required for cgo described as
- any saddle, cradle, or wooden support which may be required to support the locos to be supplied by Merchant at their time and expense ** ETA CHENNAI 16/17 DEC. 2007.*

It is hereby agreed that this Contract shall be performed subject to the terms contained on Page 1 and 2 hereof which shall prevail over any previous arrangements and which shall in turn be superseded (except as to deadfreight and demurrage) by the terms of the Bill of Lading, the terms of which (in full or in exact) are found on the reverse side hereof.

| Signature (Carrier) | Signature (Merchant) |
| --- | --- |
| [signature] [stamp: Scan-Trans Shipping & Chartering Sdn Bhd] | For WINSTAR SHIPPING SERVICES [signature] Authorised Signatory |

# FULL TERMS OF THE CARRIER'S BILL OF LADING FORM*)

**1. Definition.**
Wherever the term "Merchant" is used in this Bill of Lading, it shall be deemed to include the Shipper, the Receiver, the Consignee, the Holder of the Bill of Lading and the Owner of the cargo.

**2. General Paramount Clause.**
The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment shall apply to this contract. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipments to which no such enactments are compulsorily applicable, the terms of the said Convention shall apply.

*Trades where Hague-Visby Rules apply.*
In trades where the International Brussels Convention 1924 as amended by the Protocol signed at Brussels on February 23rd 1968 - The Hague-Visby Rules - apply compulsorily, the provisions of the respective legislation shall be considered incorporated in this Bill of Lading. The Carrier takes all reservations possible under such applicable legislation, relating to the period before loading and after discharging and while the goods are in the charge of another Carrier, and to deck cargo and live animals.

**3. Jurisdiction.**
Any dispute arising under this Bill of Lading shall be decided in the country where the carrier has his principal place of business, and the law of such country shall apply except as provided elsewhere herein.

**4. Period of Responsibility.**
The Carrier or his Agent shall not be liable for loss of or damage to the goods during the period before loading and after discharge from the vessel, howsoever such loss or damage arises.

**5. The Scope of Voyage.**
As the vessel is engaged in liner service the intended voyage shall not be limited to the direct route but shall be deemed to include any proceeding or returning to or stopping or slowing down at or off any ports or places for any reasonable purpose connected with the service including maintenance of vessel and crew.

**6. Substitution of Vessel, Transhipment and Forwarding.**
Whether expressly arranged beforehand or otherwise, the Carrier shall be at liberty to carry the goods to their port of destination by the said or other vessel or vessels either belonging to the Carrier or others, or by other means of transport, proceeding either directly or indirectly to such port and to carry the goods or part of them beyond their port of destination, and to tranship, land and store the goods either on shore or afloat and reship and forward the same at Carrier's expense, but at Merchant's risk. When the ultimate destination at which the Carrier may have engaged to deliver the goods is other than the vessel's port of discharge, the Carrier acts as Forwarding Agent only.
The responsibility of the Carrier shall be limited to the part of the transport performed by him on vessels under his management and no claim will be acknowledged by the Carrier for damage or loss arising during any other part of the transport even though the freight for the whole transport has been collected by him.

**7. Lighterage.**
Any lightering in or off ports of loading or ports of discharge to be for the account of the Merchant.

**8. Loading, Discharging and Delivery**
of the cargo shall be arranged by the Carrier's Agent unless otherwise agreed.
Landing, storing and delivery shall be for the Merchant's account.
Loading and discharging may commence without previous notice.
The Merchant or his Assign shall tender the goods when the vessel is ready to load and as fast as the vessel can safely receive and - but only if required by the Carrier - also outside ordinary working hours notwithstanding any custom of the port. Otherwise the Carrier shall be relieved of any obligation to load such cargo and the vessel may leave the port without further notice and deadfreight is to be paid.
The Merchant or his Assign shall take delivery of the goods and continue to receive the goods as fast as the vessel can safely deliver and - but only if required by the Carrier - also outside ordinary working hours notwithstanding any custom of the port. Otherwise the Carrier shall be at liberty to discharge the goods and any discharge to be deemed a true fulfilment of the contract, or alternatively to act under Clause 16.
The Merchant shall bear all overtime charges in connection with tendering and taking delivery of the goods as above.
If the goods are not applied for within a reasonable time, the Carrier may sell the same privately or by auction.
The Merchant shall accept his reasonable proportion of unidentified loose cargo.

**9. Live Animals and Deck Cargo**
shall be carried subject to the Hague Rules as referred to in Clause 2 hereof with the exception that notwithstanding anything contained in Clause 19 the Carrier shall not be liable for any loss or damage resulting from any act, neglect or default of his servants in the management of such animals and deck cargo.

**10. Options.**
The port of discharge for optional cargo must be declared to the vessel's Agents at the first of the optional ports not later than 48 hours before the vessel's arrival there. In the absence of such declaration the Carrier may elect to discharge at the first or any other optional port and the contract of carriage shall then be considered as having been fulfilled. Any option can be exercised for the total quantity under this Bill of Lading only.

**11. Freight and Charges.**
(a) Prepayable freight, whether actually paid or not, shall be considered as fully earned upon loading and non-returnable in any event. The Carrier's claim for any charges under this contract shall be considered definitely payable in like manner as soon as the charges have been incurred.
Interest at 5 per cent., shall run from the date when freight and charges are due.
(b) The Merchant shall be liable for expenses of fumigation and of gathering and sorting loose cargo and of weighing onboard and expenses incurred in repairing damage to and replacing of packing due to excepted causes and for all expenses caused by extra handling of the cargo for any of the aforementioned reasons.
(c) Any dues, duties, taxes and charges which under any denomination may be levied on any basis such as amount of freight, weight of cargo or tonnage of the vessel shall be paid by the Merchant.
(d) The Merchant shall be liable for all fines and/or losses which the Carrier, vessel or cargo may incur through non-observance of Custom House and/or import or export regulations.
(e) The Carrier is entitled in case of incorrect declaration of contents, weights, measurements or value of the goods to claim double the amount of freight which would have been due if such declaration had been correctly given. For the purpose of ascertaining the actual facts, the Carrier reserves the right to obtain from the Merchant the original invoice and to have the contents inspected and the weight, measurement or value verified.

**12. Lien.**
The Carrier shall have a lien for any amount due under this contract and costs of recovering same and shall be entitled to sell the goods privately or by auction to cover any claims.

**13. Delay.**
The Carrier shall not be responsible for any loss sustained by the Merchant through delay of the goods unless caused by the Carrier's personal gross negligence.

**14. General Average and Salvage.**
General Average to be adjusted at any port or place at Carrier's option and to be settled according to the York-Antwerp Rules 1974. In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which or for the consequence of which the Carrier is not responsible by statute, contract or otherwise, the Merchant shall contribute with the Carrier in General Average to the payment of any sacrifice, losses or expenses of a General Average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the goods. If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the salving vessel or vessels belonged to strangers.

**15. Both-to-Blame Collision Clause.** (This clause to remain in effect even if unenforceable in the Courts of the United States of America).
If the vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, negligence or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the vessel, the Merchant will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her Owner in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the owner of the said goods paid or payable by the other or non-carrying vessel or her Owner to the owner of said cargo and set-off, or recouped or recovered by the other or non-carrying vessel or her Owner as part of his claim against the carrying vessel or Carrier. The foregoing provisions shall also apply where the Owner, operator or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

**16. Government directions, War, Epidemics, Ice, Strikes, etc.**
(a) The Master and the Carrier shall have liberty to comply with any order or directions or recommendations in connection with the transport under this contract given by any Government or Authority, or anybody acting or purporting to act on behalf of such Government or Authority, or having under the terms of the insurance on the vessel the right to give such orders or directions or recommendations.
(b) Should it appear that the performance of the transport would expose the vessel or any goods onboard to risk of seizure or damage or delay, resulting from war, warlike operations, blockade, riots, civil commotions or piracy, or any person onboard to the risk of loss of life or freedom, or that any such risk has increased, the Master may discharge the cargo at port of loading or any other safe and convenient port.
(c) Should it appear that epidemics, quarantine, ice - labour troubles, labour obstructions, strikes, lockouts, any of which onboard or on shore - difficulties in loading or discharging would prevent the vessel from leaving the port of loading or reaching or entering the port of discharge or there discharging in the usual manner and leaving again, all of which safely and without delay, the Master may discharge the cargo at port of loading or any other safe and convenient port.
(d) The discharge under the provisions of this clause of any cargo for which a Bill of Lading has been issued shall be deemed due fulfilment of the contract. If in connection with the exercise of any liberty under this clause any extra expenses are incurred, they shall be paid by the Merchant in addition to the freight, together with return freight if any and a reasonable compensation for any extra services rendered to the goods.
(e) If any situation referred to in this clause may be anticipated, or if for any such reason the vessel cannot safely and without delay reach or enter the loading port or must undergo repairs, the Carrier may cancel the contract before the Bill of Lading is issued.
(f) The Merchant shall be informed if possible.

**17. Identity of Carrier.**
The Contract evidenced by this Bill of Lading is between the Merchant and the Owner of the vessel named herein (or substitute) and it is therefore agreed that said Shipowner only shall be liable for any damage or loss due to any breach or non-performance of any obligation arising out of the contract of carriage, whether or not relating to the vessel's seaworthiness. If, despite the foregoing, it is adjudged that any other is the Carrier and/or bailee of the goods shipped hereunder, all limitations of, and exonerations from, liability provided for by law or by this Bill of Lading shall be available to such other.
It is further understood and agreed that as the Line Company or Agents who has executed this Bill of Lading for and on behalf of the Master is not a principal in the transaction, said Line, Company or Agents shall not be under any liability arising out of the contract of carriage, nor as Carrier nor bailee of the goods.

**18. Exemptions and Immunities of all servants and agents of the Carrier.**
It is hereby expressly agreed that no servant or agent of the Carrier (including every independent contractor from time to time employed by the Carrier) shall in any circumstances whatsoever be under any liability whatsoever to the Merchant for any loss, damage or delay arising or resulting directly or indirectly from any act, neglect or default on his part while acting in the course of or in connection with his employment and, but without prejudice to the generality of the foregoing provisions in this clause, every exemption, limitation, condition and liberty herein contained and every right, exemption from liability, defense and immunity of whatsoever nature applicable to the Carrier or to which the Carrier is entitled hereunder shall also be available and shall extend to protect every such servant or agent of the Carrier acting as aforesaid and for the purpose of all the foregoing provisions of this clause the Carrier is or shall be deemed to be acting as agent or trustee on behalf of and for the benefit of all persons who are or might be his servants or agents from time to time (including independent contractors as aforesaid) and all such persons shall to this extent be or be deemed to be parties to the contract evidenced by this Bill of Lading.
The Carrier shall be entitled to be paid by the Merchant on demand any sum recovered or recoverable by the Merchant or any other from such servant or agent of the Carrier for any such loss, damage or delay or otherwise.

**19. Optional Stowage. Unitization.**
(a) Goods may be stowed by the Carrier as received, or, at Carrier's option, by means of containers, or similar articles of transport used to consolidate goods.
(b) Containers, trailers and transportable tanks, whether stowed by the Carrier or received by him in a stowed condition from the Merchant, may be carried on or under deck without notice to the Merchant.
(c) The Carrier's liability for cargo stowed as aforesaid shall be governed by the Hague Rules as defined above notwithstanding the fact that the goods are being carried on deck and the goods shall contribute to general average and shall receive compensation in general average.

**Additional Clauses**
(To be added if required in the contemplated trade).

**A. Demurrage.**
The Carrier shall be paid demurrage at the daily rate per ton of the vessel's gross register tonnage as indicated on Page 2 if the vessel is not loaded or discharged with the dispatch set out in Clause 8, any delay in waiting for berth at or off port to count. Provided that if the delay is due to causes beyond the control of the Merchant, 24 hours shall be deducted from the time on demurrage.
Each Merchant shall be liable towards the Carrier for a proportionate part of the total demurrage due, based upon the total freight on the goods to be loaded or discharged at the port in question.
No Merchant shall be liable in demurrage for any delay arisen only in connection with goods belonging to other Merchants.
The demurrage in respect of each parcel shall not exceed its freight.
(This Clause shall only apply if the Demurrage Box on Page 2 is filled in).

**B. U.S. Trade, Period of Responsibility.**
In case the Contract evidenced by this Bill of Lading is subject to the U.S. Carriage of Goods by Sea Act, then the provisions stated in said Act shall govern before loading and after discharge and throughout the entire time the goods are in the Carrier's custody.

***) LINER BILL OF LADING**
(Liner terms approved by The Baltic and International Maritime Conference)
Code Name: "CONLINEBILL"
Amended January 1st, 1950, August 1st, 1952, January 1st, 1973, July 1st, 1974, August 1st, 1976, January 1st, 1978.

**ADDITIONAL CLAUSE(S) TO CONLINE BOOKING NOTE**
**LOADPORT: Chennai**
**DISCHPORT: Maputo**
**DATED: Kuala Lumpur 11th December 2007**

- **CLAUSE 20: Vessel details**
  mv "Afiya" t/c or subs
  Blt 90 - malta flg - 5177 dwt on 5.96 m - mpp/sid
  Loa 114.5m - beam 15.8m - 1 box hold/hatch - 6350 cbm bale
  grd 2 x 35 mt cranes combi - imo ftd - 11 knots - details abt wog
- p&i skuld copenhagen

- **CLAUSE 21: AT LOADINGPORT:**
  Cargo to be loaded on basis 'liner terms hook' as fast as the vessel can receive during day, night, Saturday, Sundays, holidays included, otherwise detention to apply.
  cargo to be brought alongside the vessel within the reach of vessel's gear in the sequence required by master at merchants' expense.
  cargo to be lashed/secured as per master's requirements at carrier's account and in carrier's time. Any additional lashing/securing required by merchant and/or their surveyor to be for their account.
  cargo is to be loaded by vessel's gear free of expense to the merchant provided allowed by local port authorities.
  shore site stevedoring merchants/charterers acct.
  onboard stevedoring owners' account.

- **CLAUSE 22: AT DISCHARGING PORT:**
  Cargo to be discharged on basis 'liner out hook' as fast as the vessel can deliver, day or night Saturdays, Sundays and holidays included, otherwise detention to apply. Discharging operations are to be performed with the use of the vessel's gear free of expense to Merchant provided allowed by port authorities.

  Shore site stevedoring merchants/charterers acct.
  Onboard stevedoring owners account.
  Cargo to be received alongside the vessel under reach of her tackle, and in sequence required by master. Cargo to be unlashed by vessel's crew and in carrier's time.

- **CLAUSE 23: ACCOMODATION OF CARGO:**
  Shipment on/under deck in carrier's option. Deck shipment at merchants' risk and expense, without liability to carrier for any loss and/or damage, howsoever caused, and Bs/L to be claused accordingly.

  General cargo to be fully stackable (no tier limitations) as per master's request.
  All cargo to be packed/delivered in seaworthy condition and to be fitted with adequate lifting devices/slinging points, and heavy lift to be equipped with suitable lifting eyes and/or hoisting frames and/or similar appliances, always with guaranteed sufficient strength for the foreseen loading and discharging operation.
  heavy lifts to be properly marked to indicate exact places where pieces are to be slung and to indicate exact location of the centre of gravity of each piece, to enable the carrier to lift cargo in equilibrium.
  Lashing points suitable for the sea transport are to be provided by merchants, free of expense to the carrier, any damage resulting from merchants failure to comply with the above, to be for merchants account and any time lost thereby to count as detention time.
  merchant shall be liable for any damage, including personal injuries to the vsl, her servants and/or equipment, caused by incorrect indication of weight and/or centre of gravity.
  Any required spreaders or lifting frames or slings not already onboard the vessel shall be supplied by the merchant.
  Since the vessel is not equipped with dehumidifiers and has natural/electrical Ventilation. The cargo to be duly packed for seatransportation and Carriers are not liable for any corrosion occurring from Condensation.

- **CLAUSE 24: TERMINAL CHARGES:**

All terminal charges, including, handling, storing, receiving/delivery, Truck loading and/or unloading, respectively towage of the cargo to be for the Merchant's account. If these charges invoiced to the carrier, then the Merchants hereby agrees to reimburse the carrier for all of these charges at carrier's first request.

- **CLAUSE 25: TAXES, DUES, DUTIES ETC...:**

Any/all Taxes and/or dues and/or petites and/or wharfages calculated on cargo and/or Freight to be for the Merchants Account.

- Same on vessel and/or flag to be for the Carriers' account.

- **CLAUSE 26: AGENTS:**

Carrier's Agents to be used in the port of loading and in the port of discharge. Full style of the agents to be advised on request.

- **CLAUSE 27: PART CARGO:**

The cargo loaded under this Booking Note is to be Carried as part cargo And carrier has the right to deviate from the direct geographical route for The purpose of loading/discharging other cargo(es) and/or bunkering.

- **CLAUSE 28: FORCE MAJEURE:**

Neither the Carrier nor their Agents shall be liable for a failure to perform this contract and/or any obligations there under if such failure was due to impediment beyond their control which could not reasonable be expected by them at the time of conclusion of this contract.

- **CLAUSE 29: WAR RISK INSURANCE:**

Any additional war risk premium/insurance to be for Merchants account.

- **CLAUSE 30: FREIGHT/DETENTION PAYMENT:**

Full freight, without discount deemed/earned as cargo being loaded Discount less, non-returnable, vessel and/or cargo lost or not lost, directly into Carriers bank account in Denmark less agreed commission, latest 3 banking days after completion of loading.

Merchants to be responsible and to settle any detention incurred at ports of loading and/or discharging upon presentation of Carriers Invoice/documentation.

Freight to be calculated on basis of whatever is greater weight or measurement and to be calculated on each separate unit.

- **CLAUSE 31: BILL OF LADINGS:**

Carrier will issue "Conlinebill" Bill(s) of Lading and all terms of This Conline Booking note including all special terms/clauses agreed in These Rider clauses (Addendum) shall prevail over any other terms/clauses As set out in all Conlinebill(s). The Master will deliver the cargo Only upon presentation of these documents all time lost in waiting to count as damage for detention

- **CLAUSE 32: JURIDISCTION AND ARBITRATION:**

This Contract shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with this Contract shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this Clause.

The arbitration shall be conducted in accordance with the London Maritime Arbitrators Association (LMAA) Terms current at the time when the arbitratrion proceedings are commenced.

LMAA small claims procedure to apply for claims upto USD 50,000.-

- **CLAUSE 33: ISPS CLAUSE:**

(A. (i) From the date of coming into force of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) in relation to the Vessel, the Owners shall procure that both the Vessel and "the Company" (as defined by the ISPS Code) shall comply with the requirements of the ISPS Code relating to the Vessel and "the Company". Upon request the Owners shall provide a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) to the

Charterers. The Owners shall provide the Charterers with the full style contact details of the Company Security Officer (CSO).

(ii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Owners or "the Company" to comply with the requirements of the ISPS Code or this Clause shall be for the Owners' account.

(B) (i) The Charterers shall provide the CSO and the Ship Security Officer (SSO)/Master with their full style contact details and any other information the Owners require to comply with the ISPS Code.

(ii) Except as otherwise provided in this Charter Party, loss, damage, expense, excluding consequential loss, caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account and any delay caused by such failure shall be compensated at the demurrage rate.

(C) Provided that the delay is not caused by the Owners' failure to comply with their obligations under the ISPS Code, the following shall apply:

(i) Notwithstanding anything to the contrary provided in this Charter Party, the Vessel shall be entitled to tender Notice of Readiness even if not cleared due to applicable security regulations or measures imposed by a port facility or any relevant authority under the ISPS Code.

(ii) Any delay resulting from measures imposed by a port facility or by any relevant authority under the ISPS Code shall count as laytime or time on demurrage if the Vessel is on laytime or demurrage. If the delay occurs before laytime has started or after laytime or time on demurrage has ceased to count, it shall be compensated by the Charterers at the demurrage rate.

(D) Notwithstanding anything to the contrary provided in this Charter Party, any additional costs or expenses whatsoever solely arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code including, but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections shall be for the Charterers' account, unless such costs or expenses result solely from the Owners' negligence. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

(E) If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

- **CLAUSE 34: STOPPAGE OF CANALS AND WATERWAYS CLAUSE 1968 (CODE NAME: CONWAY)**

A. If at any time before loading is completed or the vessel sails from the loading port, it appear that the vessel would be delayed for not less than ....... days by circumstances beyond the Owners' control in proceeding through any waterway, natural or artificial, including the Panama Canal and the Suez Canal, which it was intended at the time this contract was made that the vessel should transit in the course of the voyage prescribed herein, the Owners may require the Charterers to declare that the voyage shall be performed by such suitable alternative route as the Master may select and that the freight shall be increased proportionately to the consequent increase in the mileage of the voyage. If the Charterers decline or fail to declare as aforesaid within 24 hours of receiving the Owner's notice, or if there is no alternative suitable route, the Owner may thereupon cancel the contract and, if any cargo has been loaded, thereupon discharge the same at the Charterers expense.

B. If delay as aforesaid become apparent after the vessel leaves the port of loading, the Owners may require the Charterers to make the declaration described in "A." above and if the Charterers decline or fail to declare as aforesaid within 24 hours of receiving the Owners' notice, or if there is no alternative suitable route, the Owners may instruct the Master to discharge the cargo at the nearest safe and reachable port and such discharge shall be deemed due fulfilment of this contract. Save that if the mileage of the voyage is thereby decreased the freight shall be decreased proportionately, all provisions regarding freight, discharge of the cargo, laytime and demurrage as agreed for the original discharging port shall apply to discharge a the substitute port.

C. The Owners shall have a lien on the cargo for any freight and discharging [illegible] payable by the Charterers according to this Clause.

For WINSTAR SHIPPING SERVICES

Charterers

Owners

Authorised Signatory

**FIRST ORIGINAL**

LINER BILL OF LADING

B/L No. CHE/MPM/01

Reference No.

**Shipper**
RITES LIMITED
EXPOTECH DIVISION
2ND FLOOR, RITES BHAWAN
PLOT NO:1, SECTOR 29,
GURGAON - 122 001 HARYANA (INDIA)

**Consignee**
PORTOS E CAMINHOS DE FERRO DE MOCAMBIQUE
EP(CFM) MOZAMBIQUE
PRACA DOS TRABALHADORES,
CAIXA POSTAL 2158, MAPUTO
MOZAMBIQUE

**Notify address**
PORTOS E CAMINHOS DE FERRO DE MOCAMBIQUE
EP(CFM) MOZAMBIQUE
PRACA DOS TRABALHADORES,
CAIXA POSTAL 2158, MAPUTO
MOZAMBIQUE

| **Precarriage by*** | **Place of receipt by pre-carrier*** |
|---|---|
| **Vessel** M.V. AFIYA | **Port of loading** CHENNAI, INDIA |
| **port of discharge** MAPUTO, MOZAMBIQUE | **Place of delivery by on-carrier*** |

SAID TO WEIGH

| Marks and Nos. | Number and kind of packages; description of goods "SAID TO BE" SAID TO BE | | Gross weight | MEASURE Measurement |
|---|---|---|---|---|
| RITES / MOZ<br>LOCO NOS<br>D-606 TO D-610 | 05 LOCOS<br>&<br>10 BOGIES | LEASING OF 1350 HP.DLW MAKE, ALCO, CAPE GAUGE, IN SERVICE DIESEL ELECTRIC LOCOMOTIVES | 375 TONS | 1111.50 CBM |
| BOGIES NOS<br>D-606 FB & RB<br>TO<br>D-610 FB & RB | | 1350 HP, CAPE GUAGE, DLW MAKE ALCO CAPE GAUGE IN SERVICE DIESEL ELECTRIC LOCOMOTIVES | | |
| | | (EACH LOCOMOTIVE IN THREE PACKAGES CONSISTING OF ONE LOCO UPPER BODY AND TWO WHEEL BOGIES) | | |
| ALL CONTENTS/DESC AS PER SHIPPER'S DECLARATION | | EACH LOCOMOTIVE UPPER IS LOADED ON TWO TRESTLES WHICH SHALL BE SEPARATED AT THE TIME OF UNLOADING AT DESTINATION | | |

**"Cargo shipped on Deck at Merchant's risk, expense and responsibility, without liability on the part of the vessel or her owners for any loss, damage, expense or delay howsoever caused."**

CARRIER IS RESPONSIBLE FOR DISCHARGE "UNDER HOOK" ONLY

**Particulars furnished by the Merchant**

**Freight details, charges etc.**

**"FREIGHT PAYABLE AS PER BOOKING NOTE DATED 11TH DEC 2007**

**SHIPPED** on board in apparent good order and condition, weight, measure, marks, numbers, quality, contents and value unknown, for carriage to the Port of Discharge or so near thereunto as the Vessel may safely get and lie always afloat, to be delivered in the like good order and condition at the aforesaid Port unto Consignees or their Assigns, they paying freight as indicated to the left plus other charges incurred in accordance with the provisions contained in this Bill of Lading.

In accepting this Bill of Lading the Merchant expressly accepts and agrees to all its stipulations on both pages, whether written, printed, stamped or otherwise incorporated, as fully as if they were all signed by the Merchant.

One original Bill of Lading must be surrendered duly endorsed in exchange for the goods or delivery order.

IN WITNESS whereof the master of the said Vessel has signed the number of the original Bills of Lading stated below, all of this tenor and date, one of which being accomplished, the others to stand void.

**Daily demurrage rate ( additional Clause A)**

| | **Freight payable at** DENMARK | **Place and date of issue** CHENNAI /28/12/2007 |
|---|---|---|
| *** Applicable only when document used as a Through Bill of Lading** | **Number of original Bs/L** 3/3 (THREE) | **Signed by or on behalf of the master** For United Liner Agencies of India (P) Ltd., "For and on behalf of the Master MV Afiya as authorised" |

Approved by:
Baltic and International Maritime Conference,
(Bimco ), Copenhagen.

As Agents only

# EXHIBIT "2"



Page 2

**Shipper**
RITES LIMITED
EXPOTECH DIVISION
2ND FLOOR, RITES BHAWAN
PLOT NO:1, SECTOR 29,
GURGAON - 122 001 HARYANA (INDIA)

LINER BILL OF LADING

B/L No. CHE/MPM/02

Reference No.

**Consignee**
PORTOS E CAMINHOS DE FERRO DE MOCAMBIQUE
EP(CFM) MOZAMBIQUE
PRACA DOS TRABALHADORES,
CAIXA POSTAL 2158, MAPUTO
MOZAMBIQUE

**Notify address**

PORTOS E CAMINHOS DE FERRO DE MOCAMBIQUE
EP(CFM) MOZAMBIQUE
PRACA DOS TRABALHADORES,
CAIXA POSTAL 2158, MAPUTO
MOZAMBIQUE

| Precarriage by* | Place of receipt by pre-carrier* |
|---|---|
| **Vessel** M.V. AFIYA | **Port of loading** CHENNAI,INDIA |
| **port of discharge** MAPUTO, MOZAMBIQUE | **Place of delivery by on-carrier*** |

| Marks and Nos. | Number and kind of packages; description of goods "SAID TO BE" SAID TO BE | | Gross weight SAID TO WEIGH | Measurement MEASURE |
|---|---|---|---|---|
| RITES / MOZ PKGS NO 01 OF 44 TO 44 OF 44 | 44 PKGS | MAINTENANCE AND COMMISSIONING SPARES FOR LEASING OF 1350 HP, DLW MAKE, ALCO, CAPE GAUGE, IN SERVICE DIESEL ELECTRIC LOCOMOTIVES AS PER LEASING AGREEMENT NO CFM-1 OF OCTOBER 2006<br><br>MAINTENANCE AND COMMISSIONING SPARES | 4.582 TONS | 12.320 CBM |

ALL CONTENTS/DESCRIPTION AS PER SHIPPER'S DECLARATION

**"Cargo shipped on Deck at Merchant's risk, expense and responsibility, without liability on the part of the vessel or her owners for any loss, damage, expense or delay howsoever caused."**

CARRIER IS RESPONSIBLE FOR DISCHARGE "UNDER HOOK" ONLY

**Particulars furnished by the Merchant**

**Freight details, charges etc.**

"FREIGHT PAYABLE AS PER BOOKING NOTE DATED 11TH DEC 2007

**SHIPPED** on board in apparent good order and condition, weight, measure, marks, numbers, quality, contents and value unknown, for carriage to the Port of Discharge or so near thereunto as the Vessel may safely get and lie always afloat, to be delivered in the like good order and condition at the

to the left plus other charges incurred in accordance with the provisions contained in this Bill of Lading.

its stipulations on both pages, whether written, printed, stamped or otherwise incorporated, as fully as if they were all signed by the Merchant.
One original Bill of Lading must be surrendered duly endorsed in exchange for the goods or delivery order.
IN WITNESS whereof the master of the said Vessel has signed the number of

being accomplished, the others to stand void.

**Daily demurrage rate ( additional Clause A)**

| | Freight payable at DENMARK | Place and date of issue CHENNAI /28/12/2007 |
|---|---|---|
| * Applicable only when document used as a Through Bill of Lading | Number of original Bs/L<br>3/3 (THREE) | Signed by or on behalf of the master<br>For United Liner Agencies of India (P) Ltd.,<br>For and on behalf of the Master<br>MV Afiya as authorised<br>As Agents only |

Approved by:
Baltic and International Maritime Conference, (Bimco), Copenhagen.

# EXHIBIT "3"

**WINSTAR SHIPPING SERVICES**
**78/79 Armenian Street**
**Chennai, 600[illegible], India**

Invoice no: EETAINV006/08

Date: 21st January 2008

**INVOICE**

---

Vessel : M/V "Afiya"
Voy. : Chennai / Maputo
CP No. : EETA07-078

Detention
Port : Maputo
5.71528 days @ USD13,500.00 = USD77,156.28

**TOTAL DUE TO EETA** **USD77,156.28**

**NORDEA BANK, DENMARK**
**SWIFT CODE: NDEADKKK**
**USD ACCOUNT NO: 2510 5005 953873**
**IBAN NO: DK3720005005953873**
**IN FAVOUR OF: EAST ENTERPRISE & TRANSPORT ASS. LTD**
**(REF: "Afiya"-EETAINV006/08)**